United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 9, 2004**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

———————

m 03-60528

———————

LETHA M. GRAY,
BY AND THROUGH ELLA RUDD,
AS NEXT FRIEND FOR THE USE AND BENEFIT OF
LETHA M. GRAY, ALSO KNOWN AS LETHA M. GARY,

Plaintiff-Appellant,

VERSUS

BEVERLY ENTERPRISES-MISSISSIPPI, INC., ET AL.

Defendants,

BEVERLY ENTERPRISES-MISSISSIPPI, INC.;
BEVERLY HEALTH AND REHABILITATION SERVICES, INC.; JAMES C. LANDERS; DAVID
DEVEREAUX; DAVID R. BANKS; LEWIS SEWELL; CHARLES R. SINCLAIR; BOBBIE
LUCILLE BLACKARD; ALICHA D. LINDSAY,

Defendants-Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

—————————

m 03-60712

—————————

MARY BODDIE,
INDIVIDUALLY AND ON BEHALF OF
THE ESTATE AND WRONGFUL DEATH BENEFICIARIES OF DAVID GREEN,

Plaintiff-Appellant,

VERSUS

BEVERLY ENTERPRISES-MISSISSIPPI, INC.;
BEVERLY HEALTH AND REHABILITATION SERVICES, INC.; JAMES C. LANDERS; DAVID
R. DEVEREAUX; DAVID R. BANKS; LEWIS G. SEWELL;
CHARLIE R. SINCLAIR, JR.,
ALSO KNOWN AS CHUCK SINCLAIR; JOHN DOES 1-10,

Defendants-Appellees,

UNIDENTIFIED ENTITIES 1-10,

Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

2

_____

№ 03-60768
_____

GENEVA G. RUSHING,
BY AND THROUGH DOROTHY SHERIFF, HER CONSERVATOR,
FOR THE USE AND BENEFIT OF GENEVA G. RUSHING,

Plaintiff-Appellant,

VERSUS

BEVERLY ENTERPRISES-MISSISSIPPI, INC.;
BEVERLY HEALTH AND REHABILITATION SERVICES, INC.; JAMES C. LANDERS; DAVID R. DEVEREAUX; DAVID R. BANKS; LEWIS SEWELL; CHARLIE R. SINCLAIR, JR.,
ALSO KNOWN AS CHUCK SINCLAIR;
ALICHA LINDSAY; JOHN DOES 1-10; UNIDENTIFIED ENTITIES 1-10,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____

3

Before SMITH and GARZA, Circuit Judges, and VANCE,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

The plaintiffs bring this consolidated interlocutory appeal challenging orders denying their motions for remand to state court after the defendants removed these actions to federal district court. Because the relevant Mississippi law is, at a minimum, ambiguous, there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved . . . . " *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003). Under such circumstances, there is no fraudulent joinder, and removal is inappropriate, because the lack of complete diversity divests the district court of subject matter jurisdiction. We therefore reverse and remand.

I.

The plaintiffs filed their respective suits in Mississippi state court alleging that residents of Beverly Healthcare-Northwest nursing home were injured as a result of the conduct of all the defendants. The named defendants include the corporate owners of the nursing home, Beverly Enterprises-Mississippi, Inc., and Beverly Health and Rehabilitation Services, Inc. These defendants are California corporations with their principal place of business in Arkansas and are therefore diverse from the plaintiffs, all of whom are residents and citizens of Mississippi. Also named as defendants are numerous individual licensees and administrators of the facility, some of whom are diverse from the plaintiffs and others of whom are non-diverse (*i.e.*, also citizens of Mississippi).

In each of the suits (consolidated for purposes of appeal), defendants removed to federal district court, arguing that the in-state defendants were fraudulently joined, and therefore there is complete diversity. On each of the plaintiffs' motions to remand to state court, the district court ruled the in-state defendants were fraudulently joined, denied the motions to remand, and dismissed the claims against the in-state defendants.

The court held that the complaint did not state a viable claim against the in-state defendants under Mississippi law, specifically finding that Mississippi law does not provide a cause of action for any of the counts alleged against the in-state defendants: (1) simple negligence, (2) malice and/or gross negligence, (3) medical malpractice, (4) fraud, and (5) breach of fiduciary duty.

The court reasoned that the plaintiffs could not state a claim under state law for simple negligence against the in-state defendants because, "[u]nder Mississippi law, an agent of a disclosed principal can incur 'independent liability when his conduct constitutes *gross negligence*, malice, or reckless disregard for the rights' of another. [But,] Mississippi does not recognize a cause of action against an agent for simple negligence" (quoting *Bass v. Cal. Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991) (emphasis added by district court)). The court further held that the in-state administrator and licensee defendants did not owe plaintiffs a duty under state law, so the claims against those defendants for malice/gross negligence also fail to state a viable cause of action. The court additionally dismissed the medical malpractice, fraud, and breach of fiduciary duty claims.

Significantly, as we will explain, the plain-

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

tiffs' briefs challenge only the ruling with respect to negligence and gross negligence. Specifically, the plaintiffs' reply brief notes that the remaining claims "are not before this court," nor were they discussed in their opening brief.

The district court recognized that "[n]o Mississippi case law directly relates" to the issues at hand and that the "cases leave a *great deal* to interpretation." The court, therefore, attempted to certify the cases for appeal pursuant to rule 54(b) of the Federal Rules of Civil Procedure. Because of the peculiar language used in the district court's orders, however, we requested supplemental briefing on whether the order in one of these consolidated appealsSSNo. 03-60712 ("*Boddie*"), was properly certified so as to confer appellate jurisdiction.

Plaintiffs have moved this court to take judicial notice of unreported decisions from federal district courts in Mississippi and unreported state court judicial decisions and records. That motion was carried with the case.

## II.

On the jurisdictional question, there is no discernible difference between the wording of the order purporting to render *Boddie* fit for appeal (under either rule 54(b) or 28 U.S.C. § 1292(b)) and the corresponding orders in the other two cases. Nevertheless, even the defendants concede that we have jurisdiction over the other two cases under § 1292(b), despite the fact that there is no indication that the plaintiffs received the requisite permission from this court as required by the statute.

The relevant order in *Boddie* (as well as the orders in the other two cases) reads in pertinent part:

. . . Plaintiff seeks to certify the findings in the August 11 Opinion for interlocutory appeal. Plaintiff invokes the provisions of Rule 54(b) of the Federal Rules of Civil Procedure. . . . In the subject case, the Court finds that there exists a danger of hardship or injustice through delay which would be alleviated by immediate appeal . . . . As such, the Court finds that justice will be served by the immediate appeal of this issue . . . .

Plaintiff also invokes the provisions of 28 U.S.C. § 1292(b) . . . . Under § 1292(b), an issue is appropriate for interlocutory appeal if it "present[s] a controlling question of law as to which there is substantial ground for difference of opinion." As analyzed above, the fraudulent joinder of a business manager does present such a question, and interlocutory appeal is appropriate for that issue. . . .

. . . For these final reasons, the Court finds that the subject issue should be decided on interlocutory appeal . . . .

(Brackets in original, citations omitted.)

The defendants urge that the above-quoted order renders neither an appealable final order nor a case certified for interlocutory appeal. They rely on the proposition that an order that dismisses fewer than all defendants is not appealable unless the court makes an "express determination that there is no just reason for delay." FED. R. CIV. P. 54(b). Because the order in *Boddie* does not contain this particular phrasing, the defendants conclude rule 54(b) cannot provide the basis for our jurisdiction. Further, defendants contend that the order cannot be appealable under § 1292(b), because this court has not granted leave to take

an interlocutory appeal.

Plaintiffs, for their part, remind us that our existing jurisprudence explains that a rule 54(b) interlocutory appeal is appropriate where the language of the order appealed, independently or read together with other portions of the record, reflects the court's unmistakable intent to render the issue appealable under rule 54(b), and "nothing else is required to make the order appealable . . . ." *Ford v. Elsbury*, 32 F.3d 931, 934-35 (5th Cir. 1994). According to plaintiffs, the order reflects just this sort of unmistakable intent. The defendants completely fail to address the "unmistakable intent" argument and rely solely on the lack of the phrase "no just reason for delay."

To hold that this order is not appropriate for review under rule 54(b) because it lacks the talismanic words for which the defendants search would be directly contrary to this circuit's precedent. In *Kelly v. Lee's Old Fashioned Hamburgers, Inc.,* 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc), we held that a district court may make the requisite "express determination" without mechanically reciting the words "no just reason for delay."[1]

Such an "unmistakable intent" is readily apparent from the face of the district court's order. The court found "that there exists a danger of hardship or injustice through delay which would be alleviated by immediate appeal . . . . As such, the Court finds that justice will be served by the immediate appeal of this issue. . . ." This explanation is a mere paraphrase of the seven words "[t]here is not just reason for delay"[2]SSa paraphrase (stating that a delay would yield injustice, and an immediate appeal would serve justice) that presents an even stronger justification for appeal than existed in *Kelly*, where the district court did not expressly consider the justice of a delay, but rather impliedly did so by ordering a final judgment "pursuant to [rule] 54(b)."

The district court expressed its finding merely using a phraseology different from the seven words of the rule. Therefore, we have jurisdiction to hear the appeal of all three cases, including *Boddie*, under rule 54(b).

## III.

The plaintiffs' main contention on appeal is that the district court erred in holding that Mississippi law does not recognize a cause of action for negligence or gross negligence against the in-state defendants. From that, plaintiffs reason that removal was improper.

## A.

Plaintiffs first suggest that the court applied an incorrect standard in considering their motions to remand. Such a motion will be denied on grounds of fraudulent joinder only if based on "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Because neither the parties nor the district court contends there was actual fraud, we look only to the second test.

---

[1] *See also Askanase v. Livingwell, Inc.*, 981 F.2d 807, 810 (5th Cir. 1993) ("[I]t is not necessary for the Trial Court to recite the magic words of 'no just reason for delay.'").

[2] *See Kelly*, 908 F.2d at 1222 (Smith, J., dissenting) ("[S]ince the rule does not specifically require incantation of the seven very words, they could be paraphrased, provided that the court actually states that it had made the required determination.").

Though our earlier fraudulent joinder cases had been uncertain as to whether a removing defendant must demonstrate an absence of *any possibility* of recovery in state court, we clarified in *Travis* that the defendant must demonstrate only that there is no *reasonable* basis for predicting that the plaintiff will recover in state court. *Id.* Thus, the *Travis* court noted the similarity of the standard to that used with respect to a Federal Rule of Civil Procedure 12(b)(6) motion, in that the crucial question is whether the plaintiff has set out a valid claim under applicable state law. *Id.*

Critically, all disputed questions of fact and all ambiguities in state law must be resolved in favor of the plaintiff. *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). Further, the plaintiff may not rely solely on the allegations in his complaint; the court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff truly has a reasonable possibility of recovery in state court. *Id.* at 648-49.

The district court correctly recited this standard from *Travis*. Nevertheless, plaintiffs contend that the court "improperly expanded its review" beyond whether there is a reasonable possibility that a Mississippi court might impose liability. . . ." In making that argument, the plaintiffs repeatedly emphasize the "possibility of recovery" language while giving only lip service to the "reasonable" modifier.

To that extent, the district court correctly evaluated the fraudulent joinder claim. Although recognizing that Mississippi law on the subject is cloudy, the court disregarded the theoretical possibility of recovery and considered whether there was a reasonable possibility under state law.

For example, plaintiffs devote considerable energy to the contention that the very fact that Mississippi state courts have entered judgments against administrators and licensees of nursing homes in similar cases is conclusive evidence of the district court's error. But, after analyzing the relevant Mississippi caselaw, the district court concluded that plaintiffs lacked a reasonable possibility of recovery. This analysis, notwithstanding the fact that we may find it flawed under *de novo* review, nevertheless reflected the proper approach under applicable precedent. *See*, *e.g.*, *id.* at 647.

## B.

We review the district court's analysis of state law (*i.e.*, its determination that the plaintiffs lack a reasonable possibility of recovery) *de novo*. *See McKee v. Kansas City S. Ry.*, 358 F.3d 329, 333 (5th Cir. 2004). The district court initially concluded, in a cursory analysis, that Mississippi state law precludes recovery for simple negligence against an agent of a disclosed principal. For this the court relied solely on *Bass v. Cal. Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991), holding that a health insurance plan administrator could not be held liable in a bad faith denial of coverage suit based on mere negligent conduct. The *Bass* court noted that such agents owe no duty of good faith or other fiduciary duties to insured parties. *Id.* From this proposition, the district court extrapolated that no negligence claims can be brought successfully against agents of disclosed principals.

This conclusion was likely erroneous, and certainly inaccurate enough to warrant remand under the above-described standard, which resolves all ambiguities in favor of the party seeking remand. As plaintiffs point out, the cases relying on *Bass* are almost all in the context of insurance agents and adjusters.

7

Further, there have been several cases in which agents of disclosed principals were in fact held liable for negligence.[3]

The defendants counter that the complaints in the instant cases allege a similar sort of tort-contract hybrid cause of action, and thus, *Bass* is controlling. Nevertheless, defendants point to no additional cases in which the *Bass* limitation has been applied outside the context of bad-faith denial of claims. Consequently, the court incorrectly held that there is no reasonable basis for predicting that a cause of action for simple negligence will lie under the circumstances alleged.

That error, however, is not dispositive. The district court went on to find that the plaintiffs additionally cannot state a cause of action for malice or gross negligence; the court based its conclusion on the in-state defendants' lack of duty to the plaintiffs. These same arguments apply with equal force to claims for simple negligence. Thus, if the court was correct in its reason for finding that the plaintiffs cannot state a claim for gross negligence, then its erroneous refusal to recognize a simple negligence cause of action would be irrelevant, for that claim would be barred on the other grounds.[4]

---

[3] *See, e.g., Wood v. Allstate Ins. Co.*, 1997 WL 570848, at *2 (N.D. Miss. 1997) ("The *Bass* decision is limited to the tort-contract hybrid cause of action for bad faith denial of insurance claims.").

[4] *Cf. LLEH, Inc. v. Wichita County, Tex.,* 289 F.3d 358, 364 (5th Cir. 2002) ("We may affirm for any reason supported by the record, even if not relied upon by the district court.").

C.

In addition to asserting that the in-state defendants were guilty of simple negligence, the complaints allege several breaches of supposed duties under the rubric of "inadequate management" constituting gross negligence. The district court stated,

The particular issue in this case is whether the duty to adequately manage Beverly Healthcare was owed by the non-diverse Defendants to Plaintiff, or whether the duty was owed to the two corporate Defendants that owned Beverly Healthcare. If the duty was owed to Plaintiff, then Plaintiff has asserted a viable state law cause of action and the case must be remanded. Conversely, if the duty was owed to the corporate Defendants, then Plaintiff has no valid cause of action against the non-diverse Defendants, requiring dismissal of the non-diverse Defendants and denial of Plaintiff's Motion to Remand.

(Footnote omitted.) The court went on to conclude that as a general matter, any duty that the licensees and administrators had to manage the nursing home adequately was owed not to the plaintiffs, but to the business itself. The plaintiffs contend this finding is in error in that both Mississippi common law and statutory regulations establish a duty to plaintiffs.

The complaints allege that the administrator and licensee defendants committed gross negligence in that they failed to comply with the regulations promulgated by the Mississippi Department of Health governing nursing homes.[5] The district court gave cursory atten

---

[5] *See* Mississippi Rules, Regulations, and Mini-
(continued...)

8

tion to this argument, noting that there was no legislative intent to create a private cause of action.

### 1.

Both sides devote considerable energy to negligence *per se* and whether these regulations allow recovery under that theory. That debate is beside the point. The district court held that the plaintiffs did not have a reasonable expectation of recovery against the in-state defendants under Mississippi law because, *inter alia*, those defendants did not owe a duty to plaintiffs. Negligence *per se*, on the other hand, is a theory by which statutes are used to establish the appropriate standard of care. In absence of a duty to the plaintiff, the relevant standard of care is moot. As even the plaintiffs note,

> The statute's provisions are deemed conclusive expressions of the applicable standard of care and reasonable conduct. Indeed, the Mississippi Supreme Court has stated that a violation of an internal regulation *"may serve as evidence of negligence,"* even if it does not give rise to a private right of action.

(Quoting *Moore v. Mem'l Hosp.*, 825 So. 2d 658, 665 (Miss. 2002); other citations omitted.) Thus, the theory of negligence *per se* does not speak to the relevant question of whether the in-state defendants owed any duty of care to the plaintiffs.

### 2.

Plaintiffs further argue, citing Minimum Standards § 408.2(e),[6] that the regulations provide an "explicit right of action" that establishes a duty. Indeed, the applicable regulation does appear to grant such a right. Unfortunately, it does not appear that any Mississippi court has determined whether those particular regulations confer a cause of action. Plaintiffs point to several recent unreported federal district court opinions concluding that such a cause of action is afforded.[7] On the

---

[6] Minimum Standards § 408.2(e) provides:

[The resident] has a right of action for damages or other relief for deprivations or infringements of his right to adequate and proper treatment and care established by an applicable statute, rule, regulation or contract . . . .

[7] *See*, *e.g.*, *Hill v. Beverly Enters.-Mississippi, Inc.*, No. 3:03CV301LN (S.D. Miss. Oct. 31, 2003), slip op. at 14 (holding, in case involving these defendants, that although "no Mississippi state court has passed on the question," it was reasonable to conclude that a possibility of recovery in state court existed). As we have said, plaintiffs have moved for us to take judicial notice of numerous unreported Mississippi state court records and decisions and unpublished authority from federal district courts in Mississippi.

We may take judicial notice of another court's judicial action. *See Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, No.02-20042, 2003 WL 21027134, at *4 (5th Cir. 2003). Although we cannot take judicial notice of findings of fact of other courts, the fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998).

(continued...)

---

[5](...continued) mum Standards for Institutions for the Aged and Infirm ("Minimum Standards"), as promulgated by MISS. CODE ANN. § 43-11-13(1).

9

other hand, defendants counter that in an analogous situation, in *Moore v. Mem. Hosp.*, 825 So. 2d 658 (Miss. 2002), involving state pharmacy board regulations, the court found no cause of action. But, as noted in *Hill*, slip op. at 13, *Moore* did not hold that regulations can never establish a legal duty or cause of action, but rather that the particular regulations considered did not do so.

In summary, Mississippi caselaw on this point is non-existent. The Minimum Standards may or may not provide a private cause of action that would be applicable here.

Defendants further counter by arguing that, even assuming the regulations are meant to grant such a cause of action, such a grant would "greatly overstep [the Department of Health's] legislative grant of authority." The relevant statutory grant authorizes the department to

> adopt, amend, promulgate and enforce such rules, regulations and standards, including classifications, with respect to all institutions for the aged or infirm to be licensed under this chapter as may be designed to further the accomplishment of the purpose of this chapter in promoting adequate care of individuals in those institutions in the interest of public health, safety and welfare.

MISS. CODE ANN. § 43-11-13(1). This statutory grant of authority may be susceptible to interpretation both for and against the ability to grant a private right of action. But, as the plaintiffs correctly note, that is more appropriately an argument for the Mississippi courts.

The dearth of applicable caselaw interpreting the Minimum Standards, coupled with the unreported district court decisions concluding that a cause of action was intended, weighs heavily in plaintiffs' favor. As we said above, when considering a fraudulent joinder argument, the court must resolve all ambiguities in state law in favor of remand. Thus, defendants are not able to meet their heavy burden of showing that there is no reasonable possibility that plaintiffs can recover in state court.[8]

3.

The district court also concluded that the licensee and administrator defendants did not owe a duty of care to the nursing home residents under Mississippi common law, and therefore plaintiffs have no reasonable possibility of recovering under Mississippi law. The district court analytically divided the allegations of gross negligence into two categoriesSSthose relating to "either (1) the daily hands-on care of Plaintiff[s]; or (2) the typical functions of a manager."

With respect to the latter category, the court found that "absent extenuating circumstances well beyond those pled in the Complaint," the in-state defendants owed to the corporate owners, rather than the residents, the duty to manage the nursing home adequately. Although the court purportedly

---

[7](...continued)

The defendants point out that the motion effectively seeks to avoid this circuit's rule against giving precedential value to unpublished opinions. That would be true if the purpose for which plaintiffs seek to have the cases noticed were to establish them as precedent. It is perfectly permissible, however, for us to take judicial notice of the very fact of the judicial act that these decisions represent. We therefore grant the motion.

---

[8] *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993) (stating that the burden in such cases is on defendant).

10

relied on several cases for this proposition, those decisions are not necessarily on point, because they more accurately reflect the law as it relates to allegations of negligence with respect to direct care rather than to inadequate management. The district court points to no cases specifically addressing whether a duty of an agent adequately to manage a facility is owed to the principal, to third parties, or to both.

Plaintiffs aver that such duties need not be mutually exclusive. Despite the accuracy of this contention, plaintiffs can point to no authority establishing that such duality of allegiances exists with respect to a duty to manage adequately. The defendants, for their part, can do no better. They cite to no case establishing that a duty to manage a facility adequately cannot be owed to a third party in addition to the entity itself. Although ambiguous questions of law must be resolved in favor of the plaintiffs, they, in the absence of *any* authority, cannot reasonably expect to recover under state law. These allegations alone, therefore, are insufficient to defeat complete diversity.

Notwithstanding the absence of authority with respect to the in-state defendants' alleged failure adequately to manage the facility, the plaintiffs additionally allege direct participation on behalf of the licensees and administrators in the supposed grossly negligent care of residents. The district court found that the plaintiffs cannot adequately show that the in-state defendants were sufficiently directly involved in the "hands-on care of the plaintiff" to saddle independent tort liability on an agent of a disclosed principal. Both sides concede that such an agent may be liable under Mississippi law where he was directly involved in the commission of a tortSSin this case, if the in-

state defendants were directly involved in resident care.

The issue, therefore, is what constitutes "direct." The defendants and the district court apparently equated the term with hands-on care. Plaintiffs, on the other hand, argue for a more expansive definition.

As we have said, in the context of fraudulent joinder analysis a party may not rely on the allegations in his pleadings on their face, but must show that there is, at minimum, some reasonable dispute of a fact that, if established, would demonstrate a reasonable possibility of recovery. The district court considered affidavits from the in-state defendants claiming that "they were not involved in the hands-on care of Plaintiff[s]," determined that this evidence was unrebutted, and therefore found that plaintiffs' claims must fail.

The defendants echo this argument on appeal, contending that there is no evidence offered that demonstrates hands-on care or participation in the medical injuries alleged. Plaintiffs claim, however, that liability will lie even in the absence of such evidence, and they contend that their complaints allege sufficiently direct participationSSand that such participation need not be "hands-on," as defendants maintain.

Defendants point to *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir. 1985), for the proposition that to face tort liability, an agent such as the in-state defendants must be the "guiding spirit" or "central figure." Defendants further reason that the affidavits of the in-state defendants, which deny any direct participation in the care of the plaintiffs, stand un-rebutted and therefore demonstrate the existence of fraudulent joinder.

11

In contrast, plaintiffs rely on cases purporting to establish liability for a wider spectrum of acts and omissions. For example, in *Turner v. Wilson*, 620 So. 2d 545, 548-49 (Miss. 1983), the court stated that directors, officers, and agents may be liable for torts where they either participated in the act, authorized it or directed it, gave consent to an act, or even acquiesced in a tortious act that they knew of or "should have known of" in the exercise of reasonable care.

Plaintiffs also point to numerous unreported district court decisions in Mississippi in which, under very similar circumstances (some involving the same defendants as in this case), the courts, in plaintiffs' words, "rejected the defendants' 'myopic view of direct participation' as requiring personal contact . . ." (quoting *Hill*). In those unreported cases, the district court held that a nursing home administrator, like the in-state defendants, may be held liable for their personal tortious conduct without personal, hands-on contact with the plaintiff. *See, e.g.*, *Hill*. Rather, allegations of failure to perform managerial duties, such as maintaining adequate records and supervising those members of the staff who handled the residents' day-to-day care, were held sufficient to "afford a reasonable basis for imposing personal liability under Mississippi law." *Bradley v. Grancare, Inc.,* No.4:03CV93-P-B, at *5-6 (N.D. Miss. Aug. 18, 2003).

Lastly, plaintiffs rely on *Rein v. Benchmark Constr. Co.*, 2003 WL 21356013 (Miss. June 12, 2003), for the proposition that the question whether these defendants owe a duty to plaintiffs is one of fact. In *Rein*, a nursing home resident sued a pest control company for injuries inflicted by ants. The court found that it was possible that the pest control company was an independent contractor with no independent duty to the plaintiff. Nevertheless, it held that the question was one for the trier of fact. *Id.* at *12. Thus, plaintiffs assume that there is at least a reasonable possibility that the non-diverse defendants in this case owe a duty to them.

On balance, plaintiffs have the better of the argumentSSat least strong enough to demonstrate a reasonable possibility of recovery under Mississippi law. Plaintiffs cannot demonstrate hands-on contact by the defendants, but such activity does not seem required to impose personal liability under Mississippi law. One may easily be a direct participant in tortious conduct by merely authorizing or negligently failing to remedy misconduct by one's subordinates.

It is uncertain, at this stage of the litigation, whether plaintiffs will be able to prove their allegations of direct participation to the satisfaction of the trier of fact. Nevertheless, it is at least reasonable to expect that a Mississippi court might find that the allegations of the in-state defendants' misfeasance and nonfeasance are sufficient to state a claim under state law. The district court therefore erred in not recognizing the reasonable possibility of plaintiffs' recovery against the in-state defendants under Mississippi lawSSespecially in light of the recognized ambiguity in the caselaw that must be resolved in favor of remand.

IV.

At oral argument, we raised, and the parties have subsequently addressed in supplemental briefs, the specter of a jurisdictional defect in these cases arising from the plaintiffs' election to appeal only the district court's decisions on the negligence and gross negligence causes of action. The plaintiffs, at argument and in their supplemental brief, attempt to sidestep this po-

tential pitfall by arguing that, although their brief discusses the negligence and gross negligence causes of action, they did not necessarily fail to appeal the decisions regarding the other causes of action.

We disagree. As we have noted, plaintiffs' reply brief specifically contends that the defendants err in focusing on the other causes of action in that those causes of action "are not before this Court."

## A.

The failure to appeal those decisions, defendants contend, forecloses any possibility of success on plaintiffs' appeal. Defendants reason as follows: By failing to appeal the dismissal of the medical malpractice, breach of fiduciary duty, and fraud claims, plaintiffs concede that they have no reasonable possibility of success on the merits of those claims. Further, by not appealing those decisions, plaintiffs allow the dismissals to stand and therefore tacitly agree that the court had jurisdiction over those claims in order to dismiss them. Therefore, if we rule that the district court erred in finding the in-state defendants fraudulently joined in the negligence and gross negligence claims (and we have so ruled), the district court will be caught between a veritable Scylla and Charybdis.

That is, although we will have commanded the court to remand, because the two claims we addressed here have a reasonable possibility of success on the merits, the district court will not be able concomitantly to remand the dismissed claims, the result being that the entire action will not be remanded, but only some claims, a course of action that is contrary to 28 U.S.C. § 1441. Under the removal statute, in a diversity action where all claims relate to the same constitutional case, individual claims cannot be removed, but only entire actions.[9] Consequently, goes defendants' argument, plaintiffs, by failing to challenge the district court's jurisdiction over the other claims, have forgone the ability to have their negligence and gross negligence claims remanded to state court.

This argument is interesting and might be persuasive, but for one fatal flaw. Underlying the entire argument is the notion that by not appealing the decisions on some counts, the plaintiffs have "waived" the issue of subject matter jurisdiction over those counts. Subject matter jurisdiction, however, cannot be waived.[10]

That being so, plaintiffs' failure to appeal the other causes of action is not dispositive. We have said, above, that the district court's refusal to recognize a reasonable possibility of recovery under state law on the negligence and gross negligence claims was error. Consequently, on remand from this court, the district court must remand the *entire case* to state court.

The fact that the plaintiffs did not appeal

---

[9] *See Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376 (5th Cir. 1980) (stating that on removal, cases are considered in their entirety); c*f. United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966) (defining an entire Article III "case" as claims deriving from a "common nucleus of operative fact").

[10] *See, e.g., Clinton v. New York*, 524 U.S. 417, 428 (1998) (stating that jurisdictional questions, even of statutory, not constitutional, magnitude, may not be waived); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 575 (5th Cir. 2003) (explaining that courts have duty to raise question of subject matter jurisdiction *sua sponte*).

the dismissal of the other claims does not make it impossible for the district court to remand those claims as well. Because we hold that the plaintiffs have a reasonable possibility of recovering in state court on at least two causes of action, removal was improper, complete diversity does not exist, and the district court never properly had jurisdiction over this action.

The consequence of the district court's lack of jurisdiction is that the dismissal of those claims must be also be reversed. Although our fraudulent joinder decisions have never made the issue entirely pellucid, § 1441's holistic approach to removal mandates that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court.[11]

## B.

Defendants suggest that if plaintiffs had effectively waived the jurisdictional question with respect to the fraud, breach of fiduciary duty, and medical malpractice claims, the district court could retain jurisdiction over the dismissed claims and assume jurisdiction over the appealed claims through the supplemental jurisdiction statute, despite the lack of complete diversity. This approach is a non-starter. As both parties agree in their supplemental briefs, 28 U.S.C. § 1367, which authorizes district courts to exercise supplemental jurisdiction, cannot apply in this instance.

Specifically, § 1367(b) "has limits . . . on the use of supplemental jurisdiction in diversity cases so that it will not defeat the established rule of complete diversity."[12] As we noted in *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 354 (5th Cir. 2004), "§ 1367(b) provides that there must be complete diversity where parties are joined in a diversity suit under [Federal Rule of Civil Procedure 19 or] 20 . . . ."[13] Because multiple defendants, like those in this case, are allowed under Federal Rule of Civil Procedure 20, complete diversity must exist, and § 1367(b) does not authorize the exercise of supplemental jurisdiction.

---

[11] *See Green v. Amerada Hess Corp.*, 707 F.2d 201, 208 (5th Cir. 1983) ("If even one of [the plaintiff's] many claims might be successful, a remand to state court is necessary."); *Moody Nat'l Bank v. St. Paul Mercury Ins. Co.*, 193 F. Supp. 2d 995, 1000 (S.D. Tex. 2002) (remanding because plaintiff could recover under one of his many theories); *Blanchard v. State Farm Lloyds*, 206 F. Supp. 2d 840, 845 (S.D. Tex. 2001) (requiring only one valid cause of action for remand); *accord Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) (explaining that a court looks "to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant . . ."). This line of reasoning is consistent with our continued instruction that "diversity removal, powerful as it is, [must] remain within its congressionally marked traces [as] demanded by principles of comity and federalism . . . ." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc).

[12] 13B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE 2D § 3567.3, 2004 Supp. at 96. *See also id.* at § 3567.2 (stating that because of rule 20, "if a . . . diversity of citizenship case is brought against multiple defendants, § 1367(b) precludes supplemental jurisdiction." *Id.* § 3567.2, 2004 Supp. at 83.

[13] *See also, e.g.*, *Taylor v. Am. Tobacco Co.*, 983 F. Supp. 686, 691 (E.D. Mich. 1997) (stating that court cannot exercise original jurisdiction over claims against diverse parties and supplemental jurisdiction over claims against in-state defendants).

The dismissal of the negligence and gross negligence claims, and the dismissal of the additional claims, are REVERSED, and this matter is remanded to the district court with instruction to remand to state court.