J.C. MIMS, Plaintiff,

v.

THE RENAL CARE GROUP, INC. & Alice Luckett, Defendants.

No. 3:04 CV 891 DCB JCS.

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 28, 2005.

Robert F. Wilkins and Barry W. Howard, for the Plaintiff.

Martin Jelliffe and Meta Copeland, for the Defendants.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This cause is before the Court on the plaintiff's Motion to Remand [docket entry no. 92]. The Court previously ruled on the defendants' Motion for Summary Judgment; however, it has now come to the Court's attention that it may lack jurisdiction in this case. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### FACTS AND PROCEDURAL HISTORY

This is an action for personal injuries allegedly sustained by the plaintiff, J.C. Mims ("Mims"), while he was working at a clinic owned by Renal Care Group ("RCG"). Mims was employed by Douglas Janitorial ("Douglas") as a janitor, and was assigned by Douglas to work at the RCG facility. Alice Luckett ("Luckett") is an employee of RCG and was the facility manager at the time the plaintiff's injuries occurred. The plaintiff alleges that he was injured on June 7, 2003, when he tripped and fell over a metal plate on the clinic's loading dock while taking out the garbage at the RCG facility. Mims maintains that the defendants failed to repair some damaged garbage cans despite several previous complaints he made to Luckett, and that one of the cans contributed to his injury.

The subject lawsuit was filed on August 31, 2004, against both RCG and Luckett. In his complaint, Mims requested compensatory damages in the amount of $1,000,000.00. *See* Compl., ¶ 11. The case was removed to federal court on October 28, 2004, on the purported basis of diversity jurisdiction. Although both the plaintiff and Luckett are Mississippi citizens, the defendants averred in their Notice of Removal that Luckett had been improperly joined in the action to defeat federal jurisdiction. *See* Notice of Removal, ¶ 7. No motion to remand was filed by the plaintiff at that time. Despite their contention that Luckett was improperly joined, the case has proceeded in this Court for nearly a year without a motion from the defendants to have Luckett dismissed.

The plaintiff has now filed a Motion to Remand, and avers that Luckett was not fraudulently joined because a viable claim has been alleged against the facility manager under Mississippi Law. The plaintiff claims that because Luckett is a proper defendant in this action, complete diversity between the parties does not exist and this Court does not have subject matter jurisdiction. Though the plaintiff has not presented the Court with any justification for his long delay before seeking remand, a motion to remand on the basis of lack of subject matter jurisdiction can be made (and granted) at any time before final judgment. *See* 28 U.S.C. § 1447(c); *Andrews v. U.S. Fidelity & Guar. Co.*, 789 F.Supp. 784, 787 (S.D.Miss.1992).

## DISCUSSION

### I. Standard for Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. Removing defendants bear the burden of establishing federal subject matter jurisdiction. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 540, 59 S.Ct. 347, 83 L.Ed. 334 (1939) *Carson v. Dunham*, 121 U.S. 421, 425–26, 7 S.Ct. 1030, 30 L.Ed. 992 (1887); *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815 (5th Cir.1993); *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253–54 (5th Cir.1961). "Only state-court actions that could have originally been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Thus, where there is no federal question basis for jurisdiction, as in this case, the defendant bears the burden of showing that diversity jurisdiction exists. Pursuant to 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over cases where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States[.]"

### II. Was Luckett fraudulently joined?

In order for a federal court to entertain subject matter jurisdiction under the rubric of "diversity jurisdiction", there must be "complete diversity" between the opposing parties. *See Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806). In this case, the plaintiff is a citizen of Mississippi. While RCG is not a citizen of Mississippi, defendant Luckett is. *See* Compl., ¶ 3. In its notice of removal, however, the defendants assert that Luckett is fraudulently joined "because Mississippi law does not recognize a valid claim against a supervisor such as Ms. Luckett under [the circumstances of this case]." Notice of Removal, ¶ 7. This same argument is echoed in the defendants' response to the plaintiff's Motion to Remand.[1] *See* Def. Opp. to Motion to Remand, ¶ 1.

---

1. The defendants also complain that "[f]or almost one year, Plaintiff did not contest the removal of this action to federal court." Def. Memo. in Opp. to Motion to Remand, at 2. As already stated, however, this Court *must* remand a case if, at any time before final judgment has been rendered, it is shown that it lacks subject matter jurisdiction. The defendants claim that the plaintiff "has consented to the Court's jurisdiction throughout discovery and all pretrial matters in this case." *Id.* at 3. This allegation matters little, as a party cannot "consent" to federal jurisdiction. *See McDonal v. Abbott Laboratories*, 408 F.3d 177, 182 (5th Cir.2005) ("[S]ubject matter jurisdiction is 'non-waivable and delimits the power of federal courts.' ") (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)).

The defendants also "question the timing of Plaintiff's Motion to Remand in such close proximity to the trial of the case." Def. Memo. in Opp. to Motion to Remand, at 3. They claim that since discovery as to Luckett's involvement ended months ago, the plaintiff should have moved the Court to remand much earlier. The plaintiff's reasons for the delay cannot alter this Court's resolution of the issue. Either federal jurisdiction exists, or it does not—the parties' motivations do not factor into the calculus.

Finally, it should also be noted that while the plaintiff may have been dilatory in moving for remand, the defendants are equally at fault for allowing almost a year to pass without moving to have Luckett dismissed from the case, inasmuch as it has been their contention from the time of removal that she was fraudulently joined. While the defendants maintain that they sought dismissal of Luckett in their earlier Motion for Summary Judgment, that contention is questionable at best. The *only* argument that the defendants set forth in their Motion for Summary Judgment as grounds for Luckett's dismissal was that the dual employer/borrowed servant doctrine applied to immunize *both* RCG and Luckett from liability. *See* Def. Motion for Summ. Judgment, at 4 ("Summary judgment is appropriate in this case because Plaintiff's claims against *RCG and Alice Luckett* are controlled by the dual employee and borrowed servant doctrines.") (emphasis added). The Court has never, until this point, been fully

██ The removing party bears the burden of establishing that the non-diverse defendant was fraudulently joined. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990). Fraudulent joinder is not found when "[a]fter all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, ... that party [retains the] possibility of recovery against the party whose joinder is questioned." *Id. See also Travis v. Irby*, 326 F.3d 644 (5th Cir.2003) (stating that although some courts have found fraudulent joinder only where there is absolutely no possibility of recovery against the non-diverse defendant, the correct standard for determining whether a party has been fraudulently joined is whether there is any *reasonable* possibility of recovery). In *Travis*, the court also instructed that a district court may "pierce the pleadings" and consider summary-judgment type evidence to determine whether a party has been fraudulently joined. *Id.* at 648–49. Ultimately, "[t]he burden of persuasion on those who claim fraudulent joinder is a heavy one." *Id.* at 649.

Thus, the Court must determine whether Mims has any reasonable possibility of recovery against Luckett, as the facility manager, in order to determine whether she is a proper party to this action. The Court will first examine Mississippi case law concerning supervisor liability, and then will analyze the facts of this case within that jurisprudential framework.

*1. Mississippi Case Law Regarding Individual Liability of Supervisor*

In *Griffin v. Dolgen Corp.*, 143 F.Supp.2d 670 (S.D.Miss.2001), the plaintiff was injured when she fell on a slippery substance on the floor of a Dollar General Store and brought a claim against both the store and its manager. *Id.* The case was briefed upon the issue of whether Luckett was

removed, and Judge Barbour considered the issue of whether the store manager had been fraudulently joined to defeat diversity jurisdiction. *Id.* at 671. The court theorized that without a showing of some negligence directly attributable to the manager, the manager of a grocery store would not be liable under Mississippi law for injuries incurred by customers who slipped and fell on the premises. *Id.* at 672.

██ The analysis from *Griffin* was referenced in the case of *Gray v. Beverly Enterprises–Mississippi, Inc.*, 261 F.Supp.2d 652 (S.D.Miss.2003), where Judge Barbour once again wrestled with the issue of whether an individual had been fraudulently joined to defeat federal jurisdiction. In *Gray*, the plaintiff, a resident of the defendant nursing home, alleged that the nursing home and the nursing home manager were both liable for injuries sustained by the plaintiff while residing at the facility. *Id.* at 653–54. Judge Barbour held that "Mississippi does not recognize a cause of action against an agent for simple negligence[,]" and found that the plaintiff had no possibility of recovery against the nursing home manager. *Id.* at 657. This holding, however, was reversed by the Fifth Circuit. 390 F.3d 400 (5th Cir.2004). The Fifth Circuit explained that managers can be held liable, even if they were not directly involved in the plaintiff's injuries, if they negligently managed their subordinates:

> Plaintiffs cannot demonstrate hands-on contact by the defendants, but such activity does not seem required to impose personal liability under Mississippi law. One may easily be a direct participant in tortious conduct by merely authorizing or negligently failing to remedy misconduct by one's subordinates.
> It is uncertain, at this stage of the litigation, whether plaintiffs will be able to

fraudulently joined in this case.

prove their allegations of direct participation to the satisfaction of the trier of fact. Nevertheless, it is at least reasonable to expect that a Mississippi court might find that the allegations of the in-state defendants' misfeasance and nonfeasance are sufficient to state a claim under state law. The district court therefore erred in not recognizing the reasonable possibility of plaintiffs' recovery against the in-state defendants under Mississippi law—especially in light of the recognized ambiguity in the case-law that must be resolved in favor of remand.

*Id.* at 410. Thus, under Mississippi law, "direct participation" of a supervisor in alleged negligent acts is not necessary to find that supervisor personally liable. However, *Gray* does not alter the basic proposition that at least some negligent act must be attributed to the manager. Such an act can be in the form of negligent supervision as the following case demonstrates.

In *Shoemaker v. Jane Doe Employee and Wal–Mart Stores, Inc.,* Civil Action No. 3:98cv633 (S.D.Miss.1999), an unreported decision, the plaintiff claimed that both Wal–Mart and two supervising employees were liable for his slip-and-fall injuries at the store. The defendants removed the action on the basis of fraudulent joinder and the plaintiff's previous motion to remand was denied inasmuch as the plaintiff "had not established that he had a possibility of recovery against [the supervisors] merely from [their] administrative authority in the store on the day of the accident." *Id.* at 1 n. 1. After conducting further discovery, the plaintiff moved for remand again, asserting that not only were the supervisors ultimately responsible for the safety of customers at the store, they were also "individually charged with the duty to monitor [the Wal-mart greeter] concerning the orders given to her to mop the floor and monitor the condition in the foyer." *Id.* at 3. Judge Barbour remanded the case, finding that while mere supervisory authority was not enough to impose any reasonable basis for liability on the in-state defendants, the plaintiff had properly "stated a claim of negligent supervision" against the managers. *Id.* at 4.

In *Hale v. Wal–Mart Stores, Inc.,* 3:96cv402 (S.D.Miss.1997), another unpublished opinion, Judge Wingate was presented with a similar factual scenario. The plaintiff in *Hale* alleged that Wal–Mart and the store manager were both liable for injuries sustained to her minor son due to a fall from a shopping cart in the store. *Id.* at 2–3. The case was removed on the basis that the in-state manager had been fraudulently joined to defeat diversity jurisdiction. The plaintiff contended that the manager was personally liable because he "had a duty to warn the plaintiff and her child of the danger involved with the use of shopping carts[.]" *Id.* at 5. Additionally, the plaintiff averred that the manager "had a duty to keep the premises of the Wal–Mart store safe which he breached by failing to keep the shopping carts in safe condition[.]" *Id.* at 6. The court noted that similar allegations were also made against Wal–Mart. *Id.* at 7. Judge Wingate determined that, under Mississippi law, an employer and his employee can be held jointly and severally liable for injuries caused by the employee in the scope of his employment. *Id.* at 8. Under this *respondeat superior* theory, the court determined that the plaintiff had a possibility of recovery against the supervisor and that remand was warranted. *Id.* at 8–9. Thus, *Hale* stands for the basic proposition that a manager can be held liable for his or her own negligent acts.

*2. Application of Case Law to Allegations Against Luckett*

■ The preceding discussion of Mississippi case law demonstrates that a supervi-

sor cannot be held liable simply for being a supervisor. Administrative authority over a workplace does not make the supervisor an insurer of all who come on the premises. However, a manager may be held personally liable for his or her own negligent acts. The Fifth Circuit Court of Appeals decision in *Gray* indicates that a supervisor might be held liable under Mississippi law for "merely authorizing or negligently failing to remedy misconduct" by his or her subordinates. Thus, the Court must analyze the pleadings and proffered facts to determine whether a reasonable basis of recovery exists against Luckett either for her own negligent acts or for her negligent failure to supervise her subordinates.

The plaintiff alleges the following theory of recovery against Luckett in his complaint:

The Plaintiff . . . states that Alice Luckett was the individual who exercised supervisory authority over the subject premises and she owed a duty to J.C. Mims in the following regard: a) a duty to properly supervise the facility in which J.C. Mims worked; b) a duty to provide J.C. Mims with safe working equipment; c) a duty to report any unsafe working equipment to the proper authority; [and] d) a duty to report any unsafe working condition on the premises to the proper authority.

The Defendant Alice Luckett breached the duty owed J.C. Mims by her failure to do the following: a) failure to properly supervise the facility in which J.C. Mims worked; b) failure to provide J.C. Mims with safe working equipment; c) failure to report unsafe working equipment to the proper authority; [and] d) failure to report unsafe working conditions on the premises to the proper authority.

Compl., ¶¶ 9–10.

In his complaint, Mims recounts his recollection of the events preceding his fall at the RCG facility:

On the evening in question, J.C. Mims filled one of the [allegedly defective] garbage cans and proceeded to pull it onto the loading dock so it could be emptied into the garbage dumpster. The lighting condition on the dock was poor and the dock was not equipped with safety rails. After pulling the can onto the dock, Mr. Mims turned and walked back inside to pickup some boxes that were lying in the rear of the building near the loading dock. As Mr. Mims turned to pickup the boxes, out of the corner on [sic] his eye, he saw the garbage can began [sic] to fall so he turned and rushed back toward the can in an attempt to catch it and prevent it from falling. As he did so he tripped on a metal plate that was lying on the dock. This plate acted as a ramp for [RCG] when they received shipments from various suppliers. The metal plate was supposed to by lying against the wall on the side of the loading dock door. However, it was left lying on the dock floor by a Renal Care employee. As a result of this conduct Mr. Mims fell to the ground and sustained serious injury to his person.

Compl., ¶ 5. In essence, Mims' theory of recovery against Luckett is that she was negligent in failing to repair the unstable garbage cans despite numerous prior warnings given to her and that one of those cans contributed to his injury.[2]

---

**2.** Mims describes the condition of the trash cans and the warnings given to Luckett concerning the cans as follows:

The Renal Care Group owned several of these large garbage cans, all of which were defective. Each can [should have had] five

wheels[;] however, each can only had three or four wheels. This condition made each can unstable. The cans would constantly tilt over, especially when in use. On a number of occasions[,] J.C. Mims complained to the facility manager, Alice Luck-

The defendants contend that because the plaintiff has focused only on Luckett's prior knowledge of the defective condition of the trash cans and because he has alleged no "active negligence by Alice Luckett with regard to the dock plate[,]" which was the alleged mechanism of his injury, no reasonable possibility of recovery exists against the in-state defendant. Def. Opp. to Motion to Remand, at 9. This argument would foreclose any reasonable possibility of recovery against Luckett *only if* it is shown that the condition of the garbage cans did not cause or contribute to the plaintiff's injuries.[3] Whether the condition of the trash can actually contributed to the plaintiff's injuries is a question that will ultimately be left for the trier of fact. In determining whether a defendant has been fraudulently joined, however, the Court is to resolve all genuine factual disputes in favor of remand. Therefore, the fact that Luckett has not been charged with negligence vis a vis the metal dock plate does not preclude her possible negligence regarding the condition of the trash cans.

Thus, Luckett has not been fraudulently joined in this action inasmuch as the plaintiff has a reasonable possibility of recovery against her. Mims alleges that Luckett committed a negligent act by failing to have the damaged trash cans repaired despite being put on notice of their condition. The defendants have not denied that Luckett was responsible for keeping the trash cans in a safe condition, and they admit, moreover, that Luckett was "involved in having the garbage cans repaired" after the alleged incident occurred. Def. Memo. in Opp. to Motion to Remand, at 10. There is no compelling reason to distinguish the allegations in this case from those of *Hale* or *Shoemaker*, in which it was held that the managers could be personally liable for their own negligence in failing to inspect and repair dangerous conditions at their workplaces. Mims has alleged that the condition of the trash cans contributed to the cause of his injuries and that Luckett was negligent for not keeping the cans in good repair. While the plaintiff may or may not prevail on his claim that Luckett was individually negligent, this Court finds that he has at least some reasonable possibility of recovery from the in-state defendant.[4] Because Luckett was not fraudulently joined, this Court lacks diversity jurisdiction over this action and

ett, about the condition of the garbage cans, to no avail. After complaining about the condition of the garbage cans on one occasion, Alice Luckett suspended Mr. Mims for one week.
Compl., ¶ 5.

3. The Court notes that the defendants' logic, if taken to the extreme, would modify tort law so that an individual could never be held liable if his actions did not directly concern the "mechanism" of a plaintiff's injuries. Take, for example, a hypothetical where a store manager negligently hands a pistol to a twelve-year old boy whom he knows is apt to cause trouble. The mischievous boy points the gun down one of the store aisles at a customer, who, not surprisingly, rushes for cover. If the customer trips over a mop that had been left out and sprains his ankle, can it be fairly said that the store manager's negligence in regard to giving the pistol to the boy had nothing to do with the customer's injuries because the actual "mechanism" of the injury was the mop? Clearly, the answer is no. Admittedly, causation between the alleged negligent act of the supervisor and the injury to the plaintiff would be much easier to establish in the hypothetical provided than in the present case, but the basic theory is essentially the same. Thus, the defendants' argument, while interesting, is flawed.

4. The defendants argue, in the alternative, that Luckett's citizenship should not affect the Court's jurisdiction because she is only a nominal party to this action. As discussed, the plaintiff has a reasonable possibility of recovery against Luckett, as an individual; thus, she is a real party in interest to this action and *is not* a nominal party. This argument is without merit.

the plaintiff's Motion to Remand will be granted.

### CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that Alice Luckett was not fraudulently joined in this action and that complete diversity, therefore, does not exist between the parties. Accordingly,

IT IS HEREBY ORDERED that the plaintiff's Motion to Remand [docket entry no. 92] is **GRANTED** in that the Court lacks subject matter jurisdiction over this action; therefore this action shall be remanded to the state court from whence it came. A final order of remand shall be entered remanding this case to the Circuit Court of Hinds County, Mississippi;

IT IS FURTHER ORDERED that the Court's previous Order Denying Summary Judgment [docket entry no. 91] is hereby **VACATED** inasmuch as the Court lacked subject matter jurisdiction to rule on dispositive matters in this case.