Jackie **WEBB**, Plaintiff,

v.

**UNUMPROVIDENT CORPORATION, Provident Life & Accident Insurance Company, John D. Williams Insurance Company and Clark Baker, Defendants.**

**No. EP–04–CA–272–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

March 29, 2005.

Thomas W. Hamrick, Armstrong & Hamrick, LLP, El Paso, TX, Thomas D. Kennedy, Johnson Finkel Deluca & Kennedy, Mark Carrigan, Carrigan, Mccloskey & Roberson LLP, Houston, TX, for Plaintiff.

Jill B. Davenport, Mark T. Davenport, Figari, Davenport, L.L.P., Dallas, TX, David S. Jeans, McChristian & Jeans P.C., Jeffrey T. Lucky, Hicks & Lucky, El Paso, TX, for Defendants.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND GRANTING PLAINTIFF'S OPPOSED MOTION TO REMAND

MARTINEZ, District Judge.

On this day, the Court considered (1) Plaintiff Jackie Webb's ("Webb") "Op-

posed Motion to Remand and Brief in Support Thereof" ("Motion to Remand"), filed on August 19, 2004; (2) Defendants Unum-Provident Corporation and Provident Life & Accident Insurance Company's (collectively "Provident Defendants") "Response to Plaintiff's Motion to Remand and Brief in Support," filed on August 31, 2004; (3) Defendants John D. Williams Insurance Company and Clark Baker's (collectively "Broker Defendants") "Objections to the Affidavit of Jackie Webb Filed in Support of Plaintiff's Motion to Remand," filed on September 9, 2004; (4) "Report and Recommendation of the Magistrate Judge," filed on February 16, 2005; (5) Defendant Provident Life & Accident Insurance Company's "Objections to Report and Recommendation of Magistrate Judge Regarding Plaintiff's Motion to Remand," filed on March 2, 2005; (6) Defendants John D. Williams Insurance Company and Clark Baker's "Objection to Magistrate's Report and Recommendation," filed on March 4, 2005; (7) Plaintiff Webb's "Response to Defendant's Objections to Report and Recommendation of Magistrate Judge Regarding Plaintiff's Motion to Remand and Brief in Support Thereof," filed on March 11, 2005; and (8) Defendants' "Reply to Plaintiff's Response to Defendant's Objections to the Report and Recommendation of the Magistrate Judge," filed on March 22, 2005, in the above-captioned cause.

After *de novo* review of the pleadings and documents submitted for the Court's consideration, the Magistrate Judge's Report and Recommendation, and Defendants' objections to the Magistrate Judge's Report and Recommendation, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, and Webb's Motion to Remand granted, for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 29, 1989, Webb purchased a disability insurance policy from Provident Life & Accident Insurance Company ("Provident") by completing an Provident-issued application for insurance coverage. On this application for coverage, Webb disclosed that she was diagnosed with fibromyalgia[1] in 1975. Webb alleges that she sought to purchase a disability insurance policy from Provident pursuant to the advice and representations of her insurance agent Clark Baker ("Baker"), then employed by the John D. Williams Insurance Agency ("Williams Agency"). Webb began paying her insurance premiums under the new policy.

Webb was subsequently employed as Executive Director of the Rotary Club. However, on October 1, 1998, Webb filed a claim for disability benefits pursuant to claims procedures delineated in her disability insurance policy. She indicated that the cause of her disability was fibromyalgia. Provident evaluated Webb's disability claim and determined that Webb was entitled to benefits under her policy. From September 24, 1999 to June 28, 2002, Webb received disability benefits under the Provident policy.

Provident later required Webb to undergo an examination by Provident-appointed physician Dr. Folz. Dr. Folz issued a report in connection with his examination of Webb indicating that fibromyalgia is not an inherently disabling condition. On

---

1. "Fibromyalgia" refers to "any of a group of nonarticular [unrelated to joints] rheumatic [musculoskeletal] disorders characterized by pain, tenderness, and stiffness of muscles and associative connective tissue structures[.]" Medline Plus, *Merriam–Webster Medical Dictionary*, *at* http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical & va=fibromyalgia.

June 28, 2002, Provident sent Webb a letter stating it was reversing its decision to pay her benefits and that her disability payments would cease as of July 28, 2002. On June 6, 2003, Webb sent a letter asking Provident to reconsider her claim for benefits. Provident reaffirmed its decision to discontinue Webb's disability payments.

On June 25, 2004, Webb filed suit against UnumProvident Corporation and its subsidiary Provident Life & Accident Insurance Company, as well as insurance broker John D. Williams Insurance Company and its employee, Clark Baker, in County Court at Law Three, El Paso County, Texas. Webb asserted a Breach of Contract claim against the Provident Defendants. Webb also alleged a claim under the Texas Deceptive Trade Practices Act[2] ("Texas DTPA") against both the Provident and Broker Defendants.[3] Webb alleged an additional claim against the Defendants for unfair or deceptive practices in violation of the Texas Insurance Code, Article 21.21, *et seq.*[4] Finally, Webb asserted a general claim of negligence against all Defendants.

On July 20, 2004, the Provident Defendants, with the written consent of the Broker Defendants, removed the case from state court to the United States District Court for the Western District of Texas, contending that Webb had filed suit against the Broker Defendants simultaneously with the Provident Defendants solely to defeat federal diversity jurisdiction. Essentially, the Defendants argue that the Broker Defendants have been improperly, or fraudulently, joined. Therefore, excising the Broker Defendants from the case, there is complete diversity among the parties, and the Provident Defendants are entitled to remove the case to federal court.

On August 19, 2004, Webb moved to remand the case back to County Court at Law Three. On February 1, 2005, the Court referred Webb's Motion to Remand to the United States Magistrate Judge for a Report and Recommendation to the Court. In the Report and Recommendation, issued on February 16, 2005, the Magistrate Judge recommended that Webb's Motion to Remand be granted. Therein, the Magistrate Judge noted that an insurance agent is personally liable under the Texas DTPA for false representations if such representations caused a consumer's damages. Report and Recommendation of the Magistrate Judge, Docket No. 30, at 3 ("Magistrate Report"). The Magistrate Judge noted that because Baker sold the Provident policy to Webb and "made representations that

---

**2.** The Texas DTPA is codified at Texas Business and Commercial Code §§ 17.41 *et seq.*

**3.** Specifically, Webb alleged that the Defendants were liable for (1) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (2) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; and (3) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

**4.** Specifically, Webb alleged that the Defendants were liable for (1) misrepresenting a material fact or policy provision relating to coverage at issue; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability has become reasonably clear; (3) failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy in relation to the facts or applicable law, for the insurer's denial of a claim; (4) failing within a reasonable time to affirm or deny coverage of a claim to a policyholder; and (5) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

[Webb] would be paid under the policy if she became disabled" there was a reasonable possibility that Webb could recover from the Broker Defendants in state court. *Id.* Thus, the Magistrate Judge recommended that the Court grant Webb's Motion to Remand. The Provident Defendants and the Broker Defendants both timely filed separate objections to the Magistrate Report.

## II. STANDARD

### A. District Court Review of a Magistrate's Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court, on its own motion, may refer a pending matter to a United States Magistrate Judge for Report and Recommendation. The non-prevailing party may contest the Report and Recommendation by filing written objections within ten days after being served with a copy of the Report and Recommendation. 28 U.S.C. § 636(b)(1). The objections must specifically identify those findings or recommendations which the losing party wishes to have a district court consider. A district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987) (citation omitted).

■ A district court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made; and it may accept, reject, or modify, in whole or in part, the Report and Recommendation. 28 U.S.C. § 636(b)(1). A party's failure to file written objections to the Report and Recommendation within ten days shall bar that party from *de novo* review by a district court.[5] Since the Defendants timely filed their objections, the Court will review the Magistrate Report *de novo*.

The Provident Defendants proffered six specific objections to the Magistrate Report. They contend that the Magistrate Report (1) relied on an erroneous standard of review for claims of improper joinder; (2) improperly considered evidence submitted after removal, as well as allegations outside of Webb's original petition, in contravention of applicable case law; (3) failed to consider the Broker Defendants contemporaneous motion to dismiss under Rule 12(b)(6); (4) failed to apply Texas law to the facts and claims in Webb's original petition; (5) misapplied Texas law governing Texas DTPA claims; and (6) failed to consider the significance of relevant statutes of limitations on Webb's claims.[6]

### B. Removal, Diversity Jurisdiction, and Improper Joinder

■ When plaintiffs choose to file suit in state court, defendants may remove the case to federal court if there is complete

5. A party who fails to file written objections timely to the findings of fact and conclusions of law in a Magistrate Judge's Report and Recommendation shall be barred from appealing the factual findings and legal conclusions adopted by the district court except in cases of plain error. *Douglas v. U.S. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

6. The Broker Defendants also filed objections to the Magistrate Report. Their objections appear to be largely a reiteration of their pending "Motion to Dismiss for Failure to State a Claim on which Relief may be Granted or for Judgment on the Pleadings" (Docket No. 22). The Broker Defendants' primary objection is that adoption of the Magistrate's recommendation of remand would deny them the opportunity to be heard on their pending motion to dismiss. The remainder of the Broker Defendants' objections duplicate the Provident Defendants' objections, with a few exceptions that will be specifically discussed where appropriate *infra*.

diversity of citizenship among the parties involved and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332, 1441(a). Where defendants seek removal and non-diverse defendants are present in the case, the defendants must show that complete diversity exists by demonstrating that the plaintiff has improperly joined the non-diverse defendants. *See* 28 U.S.C. § 1441(b) (stating that removal is permitted in cases that arise under federal law. "Any other such action shall be removable only if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought.") (emphasis added); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir.2004) (en banc).

In this case, Plaintiff Webb is a citizen of the state of Texas. Defendant Unum-Provident Corporation is a Delaware corporation with its principal places of business in Portland, Maine and Chattanooga, Tennessee. Defendant Provident Life & Accident Insurance Company is a Tennessee corporation, with its principal place of business in Chattanooga, Tennessee. The Defendants assert, and Webb does not dispute, that the amount in controversy exceeds the $75,000 threshold. However, Defendants Clark Baker and John D. Williams Insurance Company, like Webb, are citizens of the state of Texas. The precise question presented is whether the Court should conclude that Webb improperly joined[7] the Broker Defendants to defeat removal and diversity jurisdiction. If so, the Court may disregard the citizenship of the Broker Defendants and allow removal of the case to federal court. *See Burden v. Gen. Dynamics Corp.*, 60 F.3d

213, 217–18 (5th Cir.1995) ("If ... there is no possibility that the state court would recognize a valid cause of action against the non-diverse defendants ..., then those defendants have been fraudulently joined and must be ignored for purposes of diversity jurisdiction.").

However, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood*, 385 F.3d at 574 (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir.1999)). The removing party must prove improper joinder by clear and convincing evidence. *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir.1990) (citation omitted); *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.1962); *Tenner v. Prudential Ins. Co. of Am.*, 872 F.Supp. 1571, 1572 (E.D.Tex. 1994) (citations omitted). There are two ways a removing party can establish improper joinder. It can show (1) fraud in a plaintiff's pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse defendants in state court. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003) (citation omitted). Because the Defendants in this case have not alleged actual fraud in Webb's pleading of jurisdictional facts, only the latter method of establishing improper joinder is before the Court.

The test under the second method of establishing improper joinder is whether the defendant has demonstrated that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.[8] In the "reasonable basis" analysis,

---

**7.** Fifth Circuit decisions have interchangeably used the terms "fraudulent joinder" and "improper joinder" to describe suit against non-diverse defendants to defeat removal or diversity jurisdiction. Although there is no sub-

stantive difference between the two terms, the preferred term is "improper" joinder. *Smallwood*, 385 F.3d at 571 n. 1.

**8.** Past cases have summarized the test as requiring that the defendant demonstrate that

"all disputed questions of fact and all ambiguities in state law must be resolved in favor of the plaintiff." *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir.2004) (citations omitted). If a plaintiff has only a mere theoretical possibility of recovery under state law against non-diverse defendants, it will not preclude a finding of improper joinder. *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir.2000).

■ There are two ways a court can resolve the question of whether a plaintiff has a reasonable basis of recovery against in-state defendants. A court may conduct a "Rule 12(b)(6)type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. This method may be employed because in many instances, "if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* Where a plaintiff has stated a claim but "misstated or omitted discrete facts that would determine the propriety of joinder," a court may pierce the pleadings and conduct a summary inquiry considering summary judgment-type evidence to determine whether a plaintiff has a reasonable possibility of recovery in state court. *Smallwood*, 385 F.3d at 573; *see also Gray*, 390 F.3d at 405 ("the court may pierce the pleadings and consider summary judgment-type evidence to determine whether the plaintiff truly has a reasonable possibility of recovery in state court").[9]

---

there is no possibility of recovery by the plaintiff against an in-state defendant. *See, e.g., Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983). Although there is no substantive difference between the seemingly divergent "no possibility" and "reasonable basis" standards, *Travis*, 326 F.3d at 647, the Fifth Circuit recently gave preference to the "reasonable basis" formulation of the improper joinder test. *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir.2004); *Smallwood*, 385 F.3d at 573. The Court, therefore, overrules the Provident Defendants' first objection to the Magistrate Report, arguing that the magistrate judge incorrectly applied a "pre-*Smallwood*" standard of review to Webb's Motion to Remand. Though the Fifth Circuit prefers the "reasonable basis" rule statement, it is a semantic change from prior rule statements and not a substantive change. In reciting the "no possibility" rule statement within the Magistrate Report, the Court cannot conclude that the magistrate judge applied an erroneous legal standard. Regardless of whether the Magistrate Report made reference to the "no possibility" language, the Magistrate Report's ultimate recommendation is clearly stated in terms of the "reasonable basis" standard. Magistrate Report at 2, 3.

9. Furthermore, "the plaintiff may not rely solely on the allegations in his complaint" to defeat a claim of improper joinder. *Gray*, 390 F.3d at 405. Consequently, the Court over-

rules the Provident Defendants' second objection to the Magistrate Report, alleging that the Magistrate Judge incorrectly considered Webb's affidavit in evaluating her Motion to Remand. The Court is of the opinion that the Provident Defendants' contention that *Smallwood* only allows a *defendant* to submit summary judgment-type evidence to prove improper joinder relies on an impermissibly narrow reading of *Smallwood*. Certainly, the Court can receive evidence offered by a defendant that includes "facts that easily can be disproved if not true." *Smallwood*, 385 F.3d at 574 n. 12. However, *Gray* makes clear that a plaintiff *must* offer evidence aside from the allegations in her complaint to defeat a claim of improper joinder. It would be quite an odd occurrence for the Fifth Circuit to mandate that a plaintiff affirmatively offer evidence and simultaneously prohibit a court from considering such evidence. Thus, the Court finds that the Magistrate Judge committed no error in considering Webb's affidavit. *See also Burden*, 60 F.3d at 217 ("[I]n support of a motion to remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint.") (internal quotations and citation omitted). The Court will also consider Webb's affidavit along with the allegations in her complaint, to determine whether the Broker Defendants have been improperly joined.

■ Where a plaintiff attempts to state multiple claims against in-state defendants, if even one of the many claims presents a reasonable probability of recovery in state court, a remand is necessary. *See Green*, 707 F.2d at 208 ("If even one of [Plaintiff's] many claims might be successful, a remand to state court is necessary.") (citation omitted). Here, Webb puts forth three state law claims against the in-state Broker Defendants: (1) violation of the Texas DTPA; (2) violation of provisions of the Texas Insurance Code; and (3) a general claim of negligence. It follows that if just one of Webb's claims against the Broker Defendants presents a reasonable probability of recovery in state court, the entire case must be remanded to the state court. *Id.*

■ When conducting an improper joinder analysis, the inquiry must be directed toward the joinder of the in-state parties, "a simple but easily obscured concept." *Smallwood*, 385 F.3d at 574. When a case is removed to federal court based on an allegation of improper joinder, "the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper.... [U]ntil the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on the merits." *Id.* at 576.[10]

Finally, the "inability to make the requisite decision [whether or not to remand the case] in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

## III. ANALYSIS

Webb alleges the following facts in support of her claims against Broker Defendants Clark Baker and the John D. Williams Insurance Agency:

Ms. Webb purchased the [Provident long-term disability insurance] [p]olicy as result of the advice and representations of [Clark] Baker who was at that time employed by or representing the [John D.] Williams Agency. The representations were not accurate. Baker failed to obtain information regarding Provident and the Policy. If Baker did adequately investigate Provident and the Policy, but then failed to disclose the results of his investigation to Ms. Webb, then he is liable for those failures. Further, Baker failed to adequately advise Ms. Webb as to the potential issues that

---

10. The Court, therefore, overrules the Provident Defendants' third objection to the Magistrate Report, which alleged that the Magistrate Judge erred in failing to consider the Broker Defendants contemporaneous Rule 12(b)(6) Motion to Dismiss. The Defendants are incorrect in their contention that the similarity of the improper joinder "reasonable basis" test and a Rule 12(b)(6) analysis also means the two tests are identical and, thus, interchangeable. "Although the [improper] joinder and Rule 12(b)(6) standards appear similar, the scope of the inquiry is different." *Travis*, 326 F.3d at 648. A court may only consider the complaint and any attachments in deciding a Rule 12(b)(6) motion. *Id.* For improper joinder, a court may pierce the pleadings and consider summary judgment-type evidence. *Id.* A court must also "account for all unchallenged factual assertions ... in the light most favorable to the plaintiff." *Id.* Furthermore, equating the two standards would ignore Defendants' heavy burden of persuasion under the improper joinder analysis. *Id.* In this manner, considering the Broker Defendants 12(b)(6) motions along with Webb's Motion to Remand shifts the emphasis away from the issue of improper joinder and closer to disposition of Webb's claims against the Broker Defendants on the merits. The Court finds that, because the jurisdictional issue had not yet been resolved, the Magistrate Judge was correct in not considering the Broker Defendants' pending dispositive Rule 12(b)(6) motion to dismiss.

might effect [sic] her rights to benefits under the Policy. The Williams Agency is liable for the acts of Baker because he was an employee and or agent for the Williams Agency. Further, the Williams Agency is liable for its failure to adequately train and supervise Baker. Baker and the Williams Agency also committed other acts and omissions which were a proximate cause of damages to Plaintiff [Webb].

Plaintiff's Original Petition at 3 ¶ 8.

Webb also submitted an affidavit in support of her Motion to Remand, which attempted to bolster her claims and elaborate on certain factual assertions in her complaint.[11] In pertinent part, Webb asserts that during lengthy telephone conversations with Baker, he admitted that he became aware that Provident had a history of wrongfully denying claims and agreed that Provident acted in bad faith by denying Webb's disability claim. Motion to Remand, Ex. A, ¶ 6. Webb also states that Baker continued to encourage her to pay her premiums timely, and she continues to pay her insurance premiums. *Id.* at ¶ 9. Webb further asserts that pursuant to her fourteen year agent/insured relationship with Baker, he was aware of the contents of her medical records and reports, the severity of her medical condition, and her need for disability benefits. *Id.* at ¶ 10.

Based on the above facts, Webb alleges claims under the Texas DTPA and Texas Insurance Code. Webb also asserts a general negligence claim against Baker and appears to assert a claim against the Williams Agency for negligent supervision of Baker. Notably, at no time have the Defendants submitted any summary judgment-type evidence to support their claim of improper joinder, even though they bear the ultimate, and heavy, burden of persuasion.

The Court will now proceed to discuss each of Webb's claims against the Broker Defendants in turn.

### A. Webb's Texas DTPA Claims Against the Broker Defendants

■ Under the Texas DTPA, a consumer may bring suit against any person "whose false, misleading, or deceptive acts, or other practices enumerated in the [DTPA] are the producing cause of the consumer's harm." *Miller v. Keyser,* 90 S.W.3d 712, 715 (Tex.2002). To maintain a claim under the Texas DTPA, a plaintiff must show (1) that they are a consumer; (2) that the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995). To support its position that the Broker Defendants were improp-

**11.** The Broker Defendants filed objections to Webb's affidavit, arguing that most of her stated "facts" were legal conclusions or statements not based on her personal knowledge. For the most part, the Broker Defendants' objections to Webb affidavit are well taken. However, it does not appear that their objections were timely filed. Webb filed her Motion to Remand on August 19, 2004, and served her Motion on the Defendants by certified mail. The Provident Defendants timely responded to the Motion to Remand on August 31, 2004. The Broker Defendants separately filed objections to Webb's affidavit on Sep-

tember 9, 2004. The objections were filed outside of the motion response time period set forth in Local Rule CV–7(d) and Federal Rule of Civil Procedure 6(e), and the Broker Defendants did not seek leave of court to file late objections to Webb's affidavit. Therefore, the Court need not consider the Broker Defendants' objections. Nonetheless, because Webb's affidavit is primarily a restatement of the allegations in her complaint drafted in the first person, it is of limited utility in determining whether the Broker Defendants were properly joined.

erly joined, the Defendants must prove by clear and convincing evidence that there is no reasonable basis to predict Webb will recover in state court as to these claims.

### 1. Is Webb a Consumer Under the DTPA?

■ A consumer is an individual "who seeks or acquires by purchase or lease, any goods or services." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (quoting Tex. Bus. & Com.Code § 17.45(4)) (internal quotations omitted). Purchase of an insurance policy is the purchase of a service within the meaning of the Texas DTPA. *3Z Corp. v. Stewart Title Guar. Co.*, 851 S.W.2d 933, 937 (Tex.App.-Beaumont 1993, no writ). Plainly, Webb is a consumer under the terms of the Texas DTPA.

### 2. Is the Alleged Conduct of the Broker Defendants Actionable Under the DTPA?

Five types of wrongful acts are actionable under the Texas DTPA. A defendant can be sued for (1) false, misleading, or deceptive acts or practices from a "laundry list" of twenty-seven violations enumerated in Texas Business & Commercial Code § 17.46(b), that is detrimentally relied on by a plaintiff; (2) breach of warranty; (3) unconscionable actions or courses of action; (4) violations of Article 21.21 of the Texas Insurance Code; and (5) violations of a tie-in statute. Tex. Bus. & Com.Code § 17.50(a)(1)-(4).

In the instant case, based on her complaint and affidavit, Webb appears to allege two types of actionable conduct against the Broker Defendants under the Texas DTPA.[12] First, Webb alleges that she purchased the Provident policy as a result of inaccurate representations of Baker, an employee of the Williams Agency. Essentially, Webb complains of a violation of Texas Business & Commercial Code § 17.46(b)(2), which prohibits parties from causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. Tex. Bus. & Com.Code § 17.46(b)(2). Webb further complains of a violation of § 17.46(b)(5), which prohibits parties from representing that goods or services have sponsorship, approval, characteristics, ingredients, benefits, or quantities they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that they do not have. Tex. Bus. & Com.Code § 17.46(b)(5). Webb also alleges a violation of § 17.46(b)(7), which prohibits representations that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Tex. Bus. & Com.Code § 17.46(b)(7)

Second, Webb alleges that Baker failed to disclose information he obtained concerning Provident and Webb's disability insurance policy.[13] The Court construes

---

12. Other factual allegations against the Broker Defendants set forth in Webb's complaint are not actionable under the Texas DTPA, but are discussed under Webb's other claims *infra*.

13. In her original petition, Webb states this claim in the alternative. She first alleges that Baker "failed to obtain information regarding Provident and the Policy." Plaintiff's Original Petition (Pla.Orig.Pet.) at 3 ¶ 8. She later states, "[i]f Baker did adequately investigate Provident and the Policy, but then failed to disclose the results of his investigation to Ms. Webb, then he is liable for those failures." In light of Webb's affidavit, which states that Baker admitted to Webb that he became aware of "Provident's history of wrongful claim [denials]," the Court construes Webb's claim against Baker as asserting a failure to disclose material information, explained *infra*. Motion to Remand, Ex. A, ¶ 6.

this claim as asserting a violation of § 17.46(b)(24), which prohibits parties from failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed. TEX. BUS. & COM. CODE § 17.46(b)(24).

### a. Webb's DTPA Misrepresentation Claims

The Magistrate Report recommended that the Court remand this case based on Webb's DTPA misrepresentation claim. Magistrate Report at 3. The Report cited *Miller v. Keyser* for the proposition that an insurance agent is personally liable for false representations if the evidence shows that the agent personally made representations which caused the consumer damages. *Id.* The Report then noted that Webb's pleadings and affidavit alleged that Baker sold Webb the policy and made representations that Webb would be paid under the policy if she became disabled. *Id.* The Broker Defendants timely objected to this finding, arguing that this fact has never been alleged by Webb. The Court finds that the Broker Defendants are correct. At no time, has Webb alleged that Baker represented that Webb would be paid under the policy if she became disabled. The Court, therefore, rejects this factual finding by the Magistrate Judge.[14] However, the Court must still proceed in evaluating whether the facts

Webb did submit create a reasonable basis to predict recovery in state court.

■■■ The Defendants argue that Webb has no reasonable basis of recovery against the Broker Defendants under a misrepresentation theory, quite simply because Webb has not, at any time, alleged a specific, affirmative misrepresentation made by Baker or the Williams Agency. This is correct. It is not just any invocation of the term "misrepresentation" that triggers a reasonable basis to predict recovery under the DTPA. At the very least, Webb must identify what deceptive statement Baker made that she subsequently relied on to her detriment. It is well-established under Texas law that an insurance agent must make a specific, affirmative misrepresentation to a consumer in order to be held liable under the relevant provisions of the DTPA. *Moore v. Whitney–Vaky Ins. Agency,* 966 S.W.2d 690, 692–93 (Tex.App.-San Antonio 1998, no pet.); *Sledge v. Mullin,* 927 S.W.2d 89, 94 (Tex.App.-Fort Worth 1996, no writ); *State Farm Mut. Ins. Co. of Tex. v. Moran,* 809 S.W.2d 613, 620 (Tex.App.-Corpus Christi 1991, writ denied).

There is good reason to impose such a requirement. With no evidence of the particular representations made to the consumer, there would be no standard "by which to measure the accuracy of the representation." *Douglas v. Delp,* 987 S.W.2d 879, 886 (Tex.1999) (reinstating a directed verdict in favor of a defendant law firm sued for misrepresentations under the DTPA because the plaintiff identified no

---

**14.** Consequently, the Court sustains the Provident Defendants' fourth objection to the Magistrate Report, which argues that the Magistrate Judge did not apply Texas law to the facts and claims in Webb's original petition. The Court overrules the Provident Defendants' fifth objection to the Magistrate Report, which argues that the Magistrate Judge misapplied Texas law governing Texas DTPA claims. The Magistrate Judge correctly applied Texas law, but not to the facts alleged in Webb's complaint or affidavit. However, the Court may still adopt the Magistrate Report, and its conclusion that the case should be remanded, if it finds that there is a reasonable basis to predict Webb would recover in state court for any one of her claims against the Broker Defendants.

particular statements made by the defendant).

Webb has had ample time and opportunity to identify any false or misleading statement made by Baker, but has failed to do so. Webb's general claim of inaccurate representations by Baker is not actionable under the applicable provisions of the DTPA. With no misrepresentation specifically identified in Webb's complaint or affidavit, there is no reasonable basis to predict that Webb would recover in state court against the Broker Defendants for any misrepresentation claim under the DTPA.[15]

### b. Webb's DTPA Failure to Disclose Claim

■ Although a specific, identified misrepresentation is required to assert a § 17.46(b)(2), (5), or (7) claim, the absence of an identified misrepresentation is not relevant to analysis of a § 17.46(b)(24) claim for failure to disclose information. Actionable conduct under a DTPA nondisclosure claim comprises a defendant's (1) failure to disclose information concerning goods or services, (2) which was known at the time of the transaction, (3) if such failure was intended to induce the consumer into a transaction, (4) which the consumer would not have entered had the information been disclosed. *Willowbrook Foods, Inc. v. Grinnell*, 147 S.W.3d 492, 506 (Tex.App.-San Antonio 2004, pet. filed).

Webb alleges that Baker had actual knowledge of Provident's historically poor claim practices[16] and at some point concluded that Provident acted in bad faith in with regard to denial of Webb's disability claim. Despite this actual knowledge, Baker deliberately failed to disclose this information to Webb. Webb further states, and it is not disputed, that had she been informed of Provident's history, she would have attempted to obtain insurance from another carrier. According to Webb's affidavit, Baker continuously encouraged Webb to pay her premiums on time. Thus, Webb alleges the intent requirement in element four of a § 17.46(b)(24) claim.

■ However, from the facts submitted, Baker obtained the undisclosed knowledge some time after Webb purchased the Provident policy. This presents the question of whether a single transaction was completed under the DTPA upon Webb's purchase of the policy, or whether a transaction occurred each time Webb paid an insurance premium. The Defendants allege that the sole transaction was completed in 1989, when Webb obtained her policy. Def. Obj. to Mag. Report at 10. The Court agrees that any transaction within the meaning of the DTPA occurred and was completed in 1989 upon issuance of Webb's policy.

Although the DTPA must be liberally construed to promote its central purpose, *Miller*, 90 S.W.3d at 715, the duration of a

---

**15.** This conclusion applies to all three of Webb's possible misrepresentation claims under §§ 17.46(b)(2), 17.46(b)(5), and 17.46(b)(7). Because element two of a viable DTPA claim is absent, the Court need not reach the issue of whether Webb sufficiently alleges that the Broker Defendants' conduct was a producing cause of her damages, at least as to her misrepresentation claims.

**16.** The Court makes no determination as to whether Provident indeed has a history of wrongfully denying claims or facilitating illegal practices. Section 17.46(b)(24) does not appear to require a certain level of veracity for the undisclosed information or mandate that such information must originate from a reputable source, but emphasizes the defendant's intent behind the failure to disclose and the anticipated decision of the consumer to decline the transaction if the information had been given to the consumer.

transaction as related to issuance of an insurance policy does not continue for whatever length of time an insured happens to pay their premiums. Webb does not allege that Baker was aware of Provident's reputation at the time she purchased the policy. As a consequence, the information Baker failed to disclose was not known at the time of the transaction, that is, upon issuance of the Provident policy in 1989. Taking all of Webb's pleadings as true, an essential element of a § 17.46(b)(24) claim is absent from Webb's pleadings. Thus, the Court finds that Defendants have met their burden of proving that there is no reasonable basis to predict recovery in state court for Webb's failure to disclose claim.

### 3. The "Producing Cause" Requirement

Because the Court finds that all of Webb's DTPA claims present no reasonable basis for recovery in state court, in that Webb pleads no actionable conduct against the Broker Defendants under the DTPA, the Court need not analyze whether Webb has alleged that the Broker Defendants' conduct was a producing cause of her damages. It should be noted, however, that even if Webb did allege some actionable conduct on the part of the Broker Defendants, she explicitly states within the DTPA claim in her complaint that "Provident's wrongful acts were a proximate and/or producing cause of Plaintiff's damages." Pla. Orig. Pet. at 6 ¶ 23. As a result, Webb cannot recover under the DTPA because she does not allege that the Broker Defendants' conduct was a producing cause of her damages. *See Boys Clubs,* 907 S.W.2d at 478 (identifying as a necessary element for a DTPA action, that

a plaintiff show that a defendant's conduct was a producing cause of her damages).

■■■ Webb does attempt to state to the contrary in her affidavit.[17] However, the Fifth Circuit makes clear that post-removal affidavits are considered in relation to a motion to remand insofar as they "clarify and amplify" the claims in a plaintiff's complaint. *Griggs v. State Farm Lloyds,* 181 F.3d 694, 701 (5th Cir.1999). Plaintiffs are not allowed to assert new causes of action or new theories of recovery by post-removal affidavit. *Id.* It follows that an affidavit should not be used to substitute contradictory statements into a plaintiff's complaint. The affidavit is not meant to be used as a *de facto* amended complaint. *Cf. Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 264 (5th Cir.1995) (noting that "a complaint amended post-removal cannot divest a federal court of jurisdiction"). Thus, the Court accepts what is pled in Webb's complaint over contrary statements in Webb's affidavit. Consequently, the Court finds that Webb has conceded that Provident's acts, and not the Broker Defendants' acts, were the producing cause of her damages under her DTPA claims. For this reason, in addition to the reason in the preceding section, the Court finds that there is no reasonable basis to predict Webb would recover in state court for her DTPA claims.

### B. Webb's Insurance Code Claim Against the Broker Defendants

Webb alleges a violation of Texas Insurance Code, Article 21.21, § 4(10)(a)(i) against the Broker Defendants, specifically for misrepresenting to a claimant a material fact or policy provision relating to the coverage at issue.[18] Article 21.21, § 16

---

**17.** Webb's affidavit states that "these acts or omissions [of Baker] were the proximate cause of [Webb's] damages." Motion to Remand, Ex. A, ¶ 3.

**18.** Pursuant to the Texas Insurance Code,

authorizes a private cause of action for deceptive insurance practices where (1) the plaintiff is a "person" within the meaning of Article 21.21, § 2(a); (2) the defendant is a "person" within the meaning of Article 21.21, § 2(a); and (3) the plaintiff was injured by acts of the defendant that violated Article 21.21, § 4 or § 17.46(b) of the DTPA. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (2000).

An insured, like Webb, may sue an independent insurance agent, like Baker, for violation of Article 21.21. *Chaffin v. Transamerica Ins. Co.,* 731 S.W.2d 728, 731 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.) (noting that an insured may sue under Article 21.21); *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 485–86 (Tex.1998) (eschewing an interpretation of Article 21.21, § 2(a) that would allow a private action against independent insurance brokers, but not insurance company employee-agents, in favor of an interpretation of the statute that permits a cause of action against both groups of agents). The only question is whether Webb alleges actionable conduct against Baker under Article 21.21, § 4.[19]

■ Under Article 21.21, as in the analysis of Webb's DTPA misrepresentation claims, Webb alleges no actionable conduct against the Broker Defendants. Webb again submits a claim based on unspecified inaccurate representations made by Baker. This is not actionable under Article 21.21 anymore than it is under the DTPA. *See Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.,* 927 S.W.2d 296, 300 (Tex.App.-El Paso 1996, writ granted), *aff'd* 966 S.W.2d 482 (Tex.1998) (holding that one of a plaintiff's five alleged misrepresentations survived summary judgment because it alleged an affirmative misrepresentation under Article 21.21, while the other four alleged misrepresentations were non-actionable failures to disclose information); *State Farm Fire & Cas. Co. v. Gros,* 818 S.W.2d 908, 912 (Tex.App.-Austin 1991, no writ) (insurance agent affirmatively misrepresented that insured's homeowner's policy covered mudslide damage). *See also Griggs,* 181 F.3d at 702 (concluding that a plaintiff's DTPA and Article 21.21 misrepresentation claims failed because plaintiff did not identify any particular misrepresentations made by the defendant).

Because Webb has not alleged any actionable misrepresentations made by the Broker Defendants, the Court finds that there is no reasonable basis to predict Webb would recover in state court under

Webb also asserts claims for unfair settlement practices, presumably against the Provident Defendants, because the claims in no way relate to the Broker Defendants alleged conduct. As has been demonstrated throughout this Order, Webb's pleadings are not a model of lucidity. While not a certainty, Webb also possibly asserts other misrepresentation claims against the Broker Defendants under Texas Insurance Code, Article 21.21, §§ 4(1) & (11)(a)-(e). It should also be noted that § 17.46(b) DTPA "laundry list" violations constitute actionable conduct under Article 21.21. Tex. Ins.Code, Art. 21.21, § 16(a). The converse is also true, Article 21.21 violations are actionable under the DTPA. Tex. Bus. & Com.Code § 17.50(a)(4). Webb apparently alleges a circular misrepresentation claim against Baker that implicates the DTPA and the Texas Insurance Code simultaneously. The following discussion resolves the improper joinder issue for all of Webb's possible Texas Insurance Code misrepresentation claims under both the DTPA and Article 21.21.

**19.** There is not a reasonable basis to predict Webb would recover for any Article 21.21 violation premised on underlying conduct in violation of § 17.46(b). As has been thoroughly discussed *supra,* Webb alleges no actionable conduct against the Broker Defendants under the DTPA.

her Texas Insurance Code, Article 21.21 claims.

### C. Webb's Negligence Claim Against the Broker Defendants

#### 1. Is there a Reasonable Basis to Predict Recovery for Negligence?

■ Webb lastly alleges a general claim of negligence against the Broker Defendants.[20] To maintain a negligence cause of action, a plaintiff must show (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of the duty; and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002).

#### a. Did the Broker Defendants Owe a Duty to Webb?

Webb contends that Baker had a duty to adequately investigate Provident and her disability policy and the duty to disclose to Webb information he possessed as to Provident's history of questionable claim practices. Defendants repeatedly assert that Baker's duties, as Webb's insurance agent, are limited to those created by the common law. Specifically, Defendants assert that Baker only had a duty to (1) use reasonable diligence to place requested insurance coverage; and (2) inform Webb if he was unable to do so. *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex.1992). Because Webb does not allege a breach of either of those two duties, Defendants argue that there is no reasonable basis to predict recovery in state court for negligence.

It is true that Webb does not allege that Baker breached either of the two common law duties of insurance agents. What Webb appears to allege is that there was a special relationship or particular course of dealing between herself and Baker that imposed a duty on his part to adequately investigate Provident and the disability policy and/or disclose information in his possession that related to Provident's supposedly poor claim processing history.

Whether an insurance agent can have duties to a consumer broader than the two common law duties, and apart from the general prohibition against deceptive practices, depends on the facts and circumstances surrounding the agent's dealings with an insured. *See e.g., Kitching v. Zamora*, 695 S.W.2d 553, 554 (Tex.1985) (extending common law duties of an insurance to encompass duty to disclose impending policy expiration where the agent receives commissions from the insured's premium payments and the expiration date information is in the possession of the agent). The Texas Insurance Code does not appear to draw a distinction between insurance agents affiliated with an insurer, and independent insurance brokers that can procure insurance from various insurers. *May*, 844 S.W.2d at 669 n. 8. Therefore, it is unclear under Texas law whether non-common law duties may differ between insurance agents affiliated with a single insurer and independent brokers like Baker and the Williams Agency.[21]

In *May v. United Services Association of America*, the Texas Supreme Court specifically left these questions open, declining to decide whether an agent's common law

---

20. This would presumably comprise a claim against Baker for negligence and a claim against the Williams Agency under a theory of respondeat superior.

21. It does seem reasonable to expect that independent insurance brokers, like Baker

and the Williams Agency who customarily represent only the insured, would have duties to generally advise and counsel their customers. 12–86 APPLEMAN ON INSURANCE LAW AND PRACTICE § 86.7 (2d ed.2005)

duties can be extended by means of agreement, course of dealing, or other evidence establishing a special undertaking on the part of the agent. 844 S.W.2d at 670 n. 10. This ambiguity in Texas law was again discussed in *Moore v. Whitney–Vaky Insurance Agency.* In *Moore* a plaintiff sought to maintain a negligence claim against his insurance agent based on a duty to affirmatively disclose to an insured a certain exclusion in policy coverage, based on a special relationship with his agent due to ongoing business relations. 966 S.W.2d at 692. The appeals court in San Antonio noted that the Texas Supreme Court did not decide the issue in *May,* before concluding that even if the Court recognized a special relationship duty, the plaintiff's deposition testimony belied the existence of any special relationship. *Id.* Likewise, in *Critchfield v. Smith,* the appeals court in Tyler declined to extend an agent's common law duties to encompass a duty to unilaterally increase an insured's coverage limits "without evidence of prior dealings where the agent has taken care of a customer's needs without consultation." *Critchfield v. Smith,* 151 S.W.3d 225, 231–32 (Tex.App.-Tyler 2004, pet. denied).

Although the three cases did not find a special relationship that broadened an agent's duties to insured parties, it appears that given the appropriate set of factual circumstances, broader duties could be imposed on an agent. The above cases demonstrate that Texas courts have not held to the contrary, but instead have alluded to the possibility that such a special relationship can exist. Thus, resolving all ambiguities in state law in favor of the plaintiff, the existence of the Broker Defendants' alleged duty to disclose information about Provident's practices depends on the facts surrounding the relationship between Baker and Webb.[22]

Webb alleges an extraordinary relationship between herself and her agent, Baker. It appears that Baker was her insurance agent from the time Webb purchased the Provident policy until she exhausted all appeals of Provident's denial of her claim. Pla. Orig. Pet. at 3 ¶ 8; Motion to Remand, Ex. A, ¶ 10. This is a period of fourteen years. Upon Webb's purchase of the Provident policy, Baker was made aware that Webb had a serious preexisting condition, fibromyalgia, and was aware of her need for disability benefits due to this condition. Motion to Remand, Ex. A, ¶ 10. Baker was also aware of the contents of Webb's medical records and reports. *Id.*

Having been apprised that Webb suffered from a potentially debilitating condition and needed additional insurance coverage for that reason, Webb alleges that Baker had actual knowledge that Provident, Webb's disability insurer for more than a decade, had a history of wrongfully denying claims. Motion to Remand, Ex. A, ¶ 6. Pursuant to a longstanding agent to

---

**22.** Webb also alleges that the Broker Defendants negligently failed to investigate the company issuing the policy Baker advised her to purchase. The Defendants argue that recognizing such a duty to investigate would amount to stating that the Broker Defendants are blanket insurers, since they would have had to monitor Provident's reputation for more than a decade, an obviously arduous task. The Court agrees that even a extraordinary relationship between an agent and insured would not authorize imposition of such a duty. The Texas Supreme Court has pro-scribed duties of insurance agents under negligence theories that would be so broad that they render agents blanket insurers. *May,* 844 S.W.2d at 672. The Court is of the opinion that a fourteen year duty imposed on the Broker Defendants to monitor and investigate Provident crosses the boundary set by *May.* Even accepting Webb's allegations of a special relationship as true, under Texas law such a relationship could not trigger so broad a duty on the Broker Defendants to investigate Provident.

insured relationship between Webb and Baker, and his seemingly intimate involvement with Webb's unique disability insurance needs, including the contents of Webb's medical records and reports, it is, at the very least, ambiguous whether Texas law would impose a duty on the Broker Defendants to disclose such information to Webb.[23] The Court must resolve all ambiguities in state law in favor of remand. *Gray,* 390 F.3d at 408. Webb alleges that Baker did not disclose this information to her until after Provident repeatedly denied her disability claim, thereby alleging breach of his duty. Webb also alleges that the Broker Defendants' omissions were the proximate cause of her damages. Pla. Orig. Pet. at 8 ¶ 29.

The Court, therefore, finds that the Defendants have fallen short of meeting their burden to show, by clear and convincing evidence, that there is no reasonable basis to predict Webb would recover in state court for her claim of negligence, comprising a special relationship theory, against the in-state Broker Defendants.

### 2. What is the Significance of the Negligence Statute of Limitations?

The Provident Defendants sixth objection to the Magistrate Report argues that the Magistrate Judge erroneously failed to consider the applicable statutes of limitation for Webb's claims. The Court agrees, and, therefore, sustains the Provident Defendants' objection. However, considering the statute of limitations issue does not change the conclusion that the Defendants have not demonstrated the absence of a reasonable basis to predict recovery for Webb's negligence claim against the Broker Defendants.

The Fifth Circuit does require that a defendant's affirmative defenses be considered in the context of a motion to remand. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.,* 99 F.3d 746, 753 (5th Cir.1996). However, affirmative defenses, such as expiration of the statute of limitations, must be proven by the defendant. *Greene v. Wyeth,* 344 F.Supp.2d 674, 680 (D.Nev.2004). If there is "any possibility" that Webb's claim might survive the affirmative defense, there remains a reasonable basis to predict recovery in state court, and the case must be remanded. *Sid Richardson,* 99 F.3d at 753.

The Defendants have strenuously argued that the relevant statutes of limitation have expired for Webb's claims against the Broker Defendants. However, all briefing on this issue has focused on Webb's DTPA and Insurance Code misrepresentation claims and Defendants' as-

---

**23.** The Defendant's would have the Court assume that the unspecified information about Provident's practices is non-actionable, speculative, or subjective opinion about Provident being a "bad company." Webb alleges that the information was pertinent. The Court cannot assume that the information was not reputable or by its nature did not need to be disclosed. If indeed, the undisclosed information was gossip, opinion, or from dubious sources, the Defendants had their opportunity to present affidavit or deposition evidence filling in the gaps left by Webb's sometimes cryptic pleadings. Because the procedural posture here involves a motion to remand, the uncertainty of the nature of the information as the type that should have been disclosed under a special relationship duty must be resolved in favor of Webb. The Defendants would have been well-advised to follow the guidance in *Smallwood* that counsels defendants to present affirmative evidence of discrete or omitted facts in support of a claim of improper joinder, such as the exact information Baker had in his possession concerning Provident, if any. In this manner, the Defendants would have been in a better position to meet their heavy burden of proving improper joinder of the Broker Defendants.

sertion that any possible misrepresentations or deceptive practices took place in 1989, when Webb purchased the Provident policy. As discussed above, Webb's DTPA and Insurance Code claims do not present a reasonable basis to predict recovery for reasons other than an expired statute of limitations.

The Defendants do not argue that Webb's negligent failure to disclose claim, pursuant to a special relationship theory, is barred by Texas two-year statute of limitations.[24] *See* TEX. CIV. PRAC. & REM.CODE § 16.003(a) (negligence claims are subject to a two-year statute of limitations). While consideration of Defendants' statute of limitations arguments may have been warranted under the Magistrate Report, because the Magistrate Judge concluded that Webb's DTPA claims were viable despite the allegation of improper joinder, they are irrelevant at this point. Webb does not allege that Baker possessed information about Provident's claim practices at the time she purchased the Provident policy in 1989. According to the complaint and affidavit, Webb alleges that Baker obtained knowledge about Provident's practices between the time she purchased her policy and the time Baker admitted to her that he became aware of Provident's history. That is, Baker had this knowledge sometime between 1989 and 2003.

While this raises some metaphysical doubt as to whether the Webb's claim is within the statute of limitations, there remains a possibility that Webb's claim comports with the statute of limitations. Moreover, it is not Webb's burden to show her claim falls within the time limitation in the present procedural context. It is the Defendants' burden to show Webb's claim is time-barred, in addition to the burden of ultimately proving improper joinder.

The Defendants have offered no evidence in the form of affidavits or depositions to support any contention that Webb's negligent failure to disclose claim is time-barred. As the Provident Defendant's stressed in their pleadings, *Smallwood* affords defendants the opportunity to offer affirmative evidence establishing omitted and discrete facts in order to establish their claim of improper joinder. *Smallwood*, 385 F.3d at 573–74. The Defendants could have offered an affidavit or other evidence to pinpoint the dates relevant to a determination that the statute of limitations has run for Webb's claim, where Webb did not affirmatively plead a date specifying when the supposed negligent acts occurred. Had this evidence been submitted and unrebutted, it may have resulted in a determination that Webb's negligent failure to disclose claim also failed, due to an expired statute of limitations. *See Gray*, 390 F.3d at 409 (discussing a district court's finding that plaintiffs' claims failed under an improper joinder analysis, where certain facts were established by in-state defendants' unrebutted affidavits). The Defendants failed to offer such evidence.

Thus, the Court finds that the Defendant's have not met their burden of proving that Webb's negligent failure to disclose claim is time-barred. There remains a possibility that Webb's claim survives the Broker Defendants' affirmative defense. Therefore, the Court concludes that the Defendant's statute of limitations argument does not affect the Court's prior determination that Webb's negligent failure to disclose allegation survives the De-

---

**24.** Instead, the Defendants only argued that Baker had no duty to disclose the information he purportedly possessed concerning Provident's claim practices. The Defendants failed to offer an alternative argument related to an expired statutes of limitations or any other bar to the viability of Webb's negligent failure to disclose claim.

 

fendants' claim of improper joinder of the Broker Defendants.

## IV. CONCLUSION

In sum, the Court finds that the Defendants have not demonstrated that there is no reasonable basis to predict recovery in state court for at least one of Webb's claims, her negligence claim, against the in-state Broker Defendants.[25] Consequently, the Defendants have not met their heavy burden of demonstrating that the Broker Defendants were improperly, or fraudulently, joined. As a result, there is a lack of complete diversity among the parties, depriving the Court of subject-matter jurisdiction over the above-captioned cause. Therefore, the Court concludes that the Magistrate Report should be adopted, Webb's Motion to Remand granted, and the case remanded to County Court at Law Three, El Paso County, Texas.[26]

Accordingly, **IT IS ORDERED** that the "Report and Recommendation of the Magistrate Judge" (Docket No. 30) be **ADOPTED.**

**IT IS FURTHER ORDERED** that Plaintiff Jackie Webb's "Opposed Motion to Remand and Brief in Support Thereof" is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **REMANDED** to County Court at Law Three, El Paso County, Texas.

**IT IS FURTHER ORDERED** that Webb's request for attorney's fees pursuant to 28 U.S.C. § 1447(c) is **DENIED.**

**IT IS FURTHER ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall close this matter.

---

25. Because the Court concludes that the Defendants have not demonstrated the absence of a reasonable basis to predict recovery for Webb's negligent failure to disclose claim, the Court need not discuss Webb's alleged claims against the Williams Agency for negligent training and supervision of Baker.

26. However, the Court denies Webb's request for attorney's fees under 28 U.S.C. 1447(c).